The Honorable Tana Lin

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NEVIN SHETTY,<br><br>Defendant. | No. 2:23-cr-00084-TL<br><br>**MOTION TO SUPPRESS**<br><br>NOTE ON MOTION CALENDAR:<br>May 13, 2024<br><br>ORAL ARGUMENT AND<br>EVIDENTIARY HEARING REQUESTED |

Defendant, Nevin Shetty, moves this Court to suppress all evidence and fruits obtained as a result of the Search Warrant issued on September 29, 2022, attached as Exhibit 1. In support of this motion, the Defendant states the following:

**INTRODUCTION**

The government's warrant affidavit ("Affidavit") shows why this case is unusual. It claims that there is probable cause to believe that Nevin Shetty, then-CFO of Commerce Fabric Inc. ("Fabric"), committed wire fraud when he invested some of Fabric's money in a cryptocurrency-based treasury account with HighTower Treasury ("HighTower"). According to the Affidavit, the investment was a crime because it was made outside the "guidelines" of the company's recently-adopted investment policy.

While this theory is an odd one because it seeks to criminalize the violation of a company policy, the problems with the Affidavit are worse: it is based on false and misleading facts. The

MOTION TO SUPPRESS - 1
(No. 2:23-cr-00084-TL)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

affiant, Special Agent Krista Beckley, materially misrepresented Fabric's investment policy to support her claim that Shetty violated it. Rather than accurately describing the policy, she passed along cherry-picked excerpts that were emailed to her by Fabric's lawyer and then used those excerpts to claim Shetty's HighTower investment violated the policy.

In doing so, she intentionally or recklessly omitted a critical fact written in the policy: As CFO, Mr. Shetty had plenary authority to authorize any investments outside its guidelines. This express authority vitiates any claim that Shetty violated the policy when he made the HighTower investment. Beckley omitted this part of the policy despite receiving the policy months before submitting the Affidavit.

While this alone is enough to warrant suppression, it is not the only false or misleading aspect of the Affidavit, which also falsely claims that Shetty invested the money after he had received a notice of termination, perhaps implying that he had some nefarious motive behind the investment. And Beckley omitted many facts proving that the HighTower investment was actually made in accordance with Fabric's standard investment practices. For example, while the Affidavit complains that Shetty did not tell anyone at Fabric about the investment before he made it, Shetty was not required to seek approval before investing company money. And it was not unusual for Shetty to open new accounts to do so. The Affidavit further omits that Shetty told others in the finance department about the HighTower investment and that it was visible on the company's books, along with Fabric's other investments. Beckley knew these things according to her 302s. Yet she left them out.

Because Beckley possessed the investment policy months before submitting the Affidavit, she either acted intentionally or recklessly when she did not provide the policy to the magistrate or accurately describe it. Had she done either of those things, the Affidavit would have lacked probable cause. And this lack of probable cause would have been even clearer had she provided the facts showing that the investment was made in accordance with Fabric's standard practices.

MOTION TO SUPPRESS - 2
(No. 2:23-cr-00084-TL)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Cured with the full facts as Beckley knew them, the Affidavit lacks sufficient facts to support probable cause. Accordingly, under *Franks v. Delaware*, 438 U.S. 154 (1978) and its progeny, the Court should suppress all evidence and any fruits obtained from the search warrant.

## RELEVANT FACTS

The Affidavit relies on Shetty's purported violation of the investment policy to claim that there was probable cause he committed wire fraud.

**I.      The Warrant Affidavit**

The Affidavit's "Summary of Probable Cause" section contains the substance of its probable cause claim. There, paragraphs 6 through 23 provide the only substantive allegations about Shetty's investment of Fabric's funds into HighTower. It first states that Shetty joined Fabric in 2021. Ex. 2 at ¶ 7. Shetty's role as CFO was to "revamp finances, oversee their bank accounts, track investments, and oversee a small team in a fiduciary role." *Id*. In addition, "Shetty had signatory authority in his role as CFO to initiate transfers on behalf of [Fabric], including access to the company's funds at Chase Bank." *Id*. at ¶ 13.

The Affidavit then discusses four wire transfers totaling $35 million that Shetty made in early April. *Id*. at ¶ 9. The money was wired from Fabric's Chase Bank account to a "HighTower Treasury" account at Circle, a peer-to-peer payment technology company that uses cryptocurrency on their platform. *Id*. at ¶¶ 9-10. These wires were sent in accordance with a "HighTower Treasury Account Agreement" between Fabric and Hightower, which was signed by Shetty on behalf of Fabric and another individual, A.B., the CEO of HighTower. *Id*. at ¶ 16. Under the agreement, HighTower would pay Fabric a set interest rate, and any earnings above that rate would belong to HighTower. *Id*. at ¶ 17. The Affidavit says that "no other members of the finance team, the CEO, or the COO at [Fabric] had previously seen this agreement with HighTower Treasury, and no one was aware of any [Fabric] investment in cryptocurrency . . ." *Id*. at ¶ 16.

MOTION TO SUPPRESS - 3
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

In addition, the Affidavit provides a couple of facts indicating that Shetty had an undisclosed financial interest in HighTower, namely that he had a HighTower email address and his name was affiliated with HighTower's account at Circle. *Id*. at ¶¶ 11-12. The Affidavit also notes that the HighTower website "indicated that HighTower Treasury would offer a 'high yield business savings account' that employs 'a diversified set of decentralized interest-rate protocols.'" *Id*. at ¶ 20. It further said that HighTower "charges zero fees and earns money off the remaining yield paid by its protocols after returning a set rate to clients." *Id*. And "consistent with the investment agreement discussed above, any remaining yield from [Fabric's] investment funds would apparently have returned to the individuals know to be associated with HighTower Treasury, [A.B.] and SHETTY." *Id*.

About a month after making the HighTower investment, it crashed. Shetty immediately notified the CEO and COO of Fabric that the money in the HighTower account had "significantly diminished in value because he had invested in Terra Coin cryptocurrency." *Id*. at ¶ 14. The Affidavit adds that, after Shetty disclosed the loss of the funds invested in HighTower, Fabric requested that Shetty pay them $35 million back. *See* 21. He had not done so. *Id*.

These facts do not support probable cause for wire fraud.

## II. The Affidavit's false and misleading statements and omissions

To create the veneer of criminality, the Affidavit relies on false and misleading statements and material omissions. Chief among them is Beckley's claim that the HighTower investment violated Fabric's investment policy.[1]

This was not true. Because the government's claim that the investment was fraudulent relies upon the allegation that the investment was unauthorized under the policy, without it, there is no probable cause.

---

[1] Defendant disputes that a violation of the policy amounts to fraud but assumes *arguendo* for purposes of this motion that it could create probable cause.

MOTION TO SUPPRESS - 4
(No. 2:23-cr-00084-TL)

While that false statement alone requires suppression, it was not the only one. For example, the Affidavit claims that Shetty was provided a notice of termination, perhaps to imply that he was no longer CFO when he made the transaction. But Shetty never received a notice of termination and had full authority to make investments on Fabric's behalf at the time of the HighTower investment. In addition, the Affidavit omits facts known to Beckley that show the investment was made in accordance with Fabric's standard practices. For example, while the Affidavit claims that Shetty did not notify Fabric about the investment before making it, it omits the fact that there was no disclosure or approval requirement in place for the CFO. The Affidavit also omits the facts that multiple employees knew about Shetty's investment in HighTower and that it was booked both in Fabric's accounting system and on its balance sheet. A cured affidavit revealing all the facts known to Beckley makes clear there is no probable cause for any viable fraud theory.

### A.   The investment did not violate Fabric's investment policy.

The Affidavit fails to provide an accurate description of the investment policy. It instead parrots the cherry-picked excerpts and false conclusion that Fabric's lawyer, John Hemann, emailed Beckley when he was pushing the government to prosecute Shetty. *See* Ex. 3. While the full three-page policy was attached to this email, the email's body included an excerpt from the policy listing approved investment types that Hemann said supported his conclusion that cryptocurrency-based investments violated the policy, but specifically left out the term "and treasury accounts" and exceptions to the policy. *Id*. This is not an accurate representation of the policy.

To begin, the Investment Policy describes its "objectives" and "investment guidelines." As Beckley said in her Affidavit, the investment guidelines list certain approved investment types, including "Money Market & Deposit Accounts," "Commercial Paper," and "Municipal Securities." Ex. 4 at 1. And it adds that, "[t]o begin with, the Treasury Program will invest in money market, deposit accounts, and treasury accounts with daily liquidity." *Id*.

MOTION TO SUPPRESS - 5
(No. 2:23-cr-00084-TL)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

The policy further provides that "[t]he Company may employ the services of an investment manager and Registered Investment Advisor (collectively "Investment Manager") to direct a portion or all of the investment activities of the Company consistent with the guidelines set forth in the investment policy." *Id*. at 2. It then describes their "Roles & Responsibilities." *Id*. at 2. Among other things, managers are responsible for evaluating the portfolio's performance, evaluating the Investment Manager's performance, and ensuring compliance with and implementation of the investment policy. *Id*.

Finally, and most critical here, is the policy's final section: "Policy Review & Exceptions." *Id*. at 3. It addresses investments that fall outside the quantitative guidelines—*i.e.*, the preapproved "list." It explains that both the COO and CFO have authority to approve investments beyond those delineated in the policy:

> The investment policy is intended to provide operational guidelines for the management of the investment portfolio. Under some circumstances, Investment Managers may learn of an investment transaction which falls outside of this investment policy but may present financial merits of the Company. In those circumstances, a written exception to the quantitative guidelines may be approved by the Company's Chief Operating Officer or Chief Financial Officer.

*Id*. Put more simply, both the COO and CFO were not bound by the investment guidelines in the policy and could approve *any* investment.

This policy was emailed to Beckley by Fabric's attorney on May 21, 2022. *See* Ex. 3. More than four months later, Beckley submitted the Affidavit purporting to describe the policy to the magistrate. As demonstrated above, however, her affidavit did not mention the policy's exceptions to the quantitative guidelines. And it did not explain that, as CFO, Shetty had the authority to approve investments outside those guidelines.

### B. Other false and misleading statements and omissions

The false statements and omissions about the investment policy were sufficiently material to affect the probable cause finding. But there are other false statements and omissions that, if

MOTION TO SUPPRESS - 6
(No. 2:23-cr-00084-TL)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

corrected, would further reinforce that Shetty had authority to make the HighTower investment.

The Affidavit claims that Shetty made the investment after receiving a notice of termination, perhaps to imply that he had some nefarious motive to make the investment. But this is false. Shetty never received a notice of termination. According to an FBI FD-302a ("302") summary of interview of Alex Shimamoto drafted by Beckley, Shimamoto confirmed that "Shetty did not receive a formal termination letter or paperwork." Ex. 5: Shimamoto 302 at 4. As Shimamoto explained, there were concerns from time to time about Shetty's performance, but he was not terminated and received no notice of termination. *Id*. at 3-4.

In addition, the Affidavit leaves out crucial context about Fabric's financial practices. For example, before she submitted the Affidavit, Beckley spoke with Alice Leung, a Fabric employee in the finance department, about Shetty's authority to make transactions on behalf of Fabric. According to the 302 Beckley drafted, Leung explained that "Shetty approved bank transfers" for Fabric. Ex. 6: Leung 302 at 1. And while the Affidavit implies that Shetty should have sought approval from someone before investing Fabric's funds, Leung told Beckley that "[t]here was no notification system in place at Fabric that would notify anyone of particular monetary transactions or flag a transactions over a certain dollar amount." Ex. 6 at 3.

Although there was no approval or disclosure requirements in place, Shetty commonly discussed his financial activities with members of the finance team—including the HighTower investment. Leung told Beckley that, during finance meetings, Shetty would "share what he was working on, including his work on investments . . ." *Id*. at 2. And despite the Affidavit's implication that Shetty kept the investment secret, Leung confirmed that Shetty told her about it. Specifically, "Shetty told [her] that he opened the HighTower account to gain more interest for Fabric and that the HighTower account provided an opportunity to make money." *Id*. Leung even had a login to the HighTower account. *Id*. at 3.

MOTION TO SUPPRESS - 7
(No. 2:23-cr-00084-TL)

Corr Cronin LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Leung further said that "HighTower was mentioned in a one-on-one Friday meeting … sometime after April 1, 2022," and that "Leung was surprised how much interest the HighTower account accumulated every day." *Id*. at 3. The investment was no secret and was visible to anyone paying attention to Fabric's finances. Indeed, Fabric Controller Lucy Harrington confirmed to Beckley that the HighTower account was "just there" on Fabric's books, along with, for example, other bank accounts. Ex. 7: Harrington 302 at 2.

Yet the Affidavit pretends there was something unusually secretive about the Fabric transfer to HighTower, claiming, for example, that "Shetty made these transfers without the knowledge of anyone else at [Fabric]." Ex. 2 at ¶ 4. The facts known to Beckley—but omitted from the Affidavit—lead to a different conclusion: this investment was treated like any other. Shetty invested Fabric's money in accordance with his authority as CFO—like he had done many times before. He did not seek approval from other officers or the board because none was required. The investment was visible on Fabric's books, and at least two other people at Fabric knew about it. Beckley knew all of this when she submitted the Affidavit.

## ARGUMENT

"To prevail on a *Franks* challenge, the defendant must establish two things by a preponderance of the evidence: first, that the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant, and second, that [this] statement or omission was material … to finding probable cause." *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (cleaned up). "If both requirements are met, the search warrant must be voided and the fruits of the search excluded . . ." *Id*.[2]

---

[2] To obtain a hearing, a defendant need only make a substantial preliminary showing of both prongs. *Id*. at 1114. Shetty has done so here.

MOTION TO SUPPRESS - 8
(No. 2:23-cr-00084-TL)

## I. The statements were false and misleading.

Under the first prong of *Franks*, the defendant must show by a preponderance of the evidence that the affiant knowingly and intentionally, or with reckless disregard for the truth, made false or misleading statements or omissions in support of the warrant application. *Perkins*, 850 F.3d at 1116.

"A warrant affidavit must set forth particular facts and circumstances . . . so as to allow the magistrate to make an *independent* evaluation of the matter." *Id*. (citing *Franks*, 438 U.S. at 165). This means that "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id*. "An officer presenting a search warrant application has a duty to provide, in good faith, all relevant information to the magistrate." *Id*. (citing *United States v. Hill*, 459 F.3d 966, 971 n.6 (9th Cir. 2006)).

This duty is violated when an affiant makes a statement that is technically true but intentionally misleading. And an affiant misleads a magistrate "[b]y reporting less than the total story, [thereby] . . . manipulat[ing] the inferences a magistrate will draw." *Id*. (citing *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir. 1985)). For example, in *United States v. Jacobs*, 986 F.2d 1231 (8th Cir. 1993), the affiant acted at least recklessly when he correctly stated that the drug dog showed an "interest" in the defendant's package but omitted the fact that the dog failed to make an official "alert." *Id*. at 1234-35.

Similarly, in *Perkins*, although the affiant correctly stated that the defendant had been arrested based on two Canadian officers' review of purportedly pornographic images, he failed to inform the magistrate judge that an expert review of those same images led to the charge being dropped. 850 F.3d at 1118. And the affiant described the images rather than providing them to the Court. *Id*. The Ninth Circuit held that "[b]y providing an incomplete and misleading recitation of

MOTION TO SUPPRESS - 9
(No. 2:23-cr-00084-TL)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

the facts *and withholding the images*, [the affiant] effectively usurped the magistrate's duty to conduct an independent evaluation of probable cause." *Id*. (citations omitted).

While the affiants in *Jacobs* and *Perkins* merely left out important facts to mislead the magistrates, the affiant here made direct misrepresentations to go along with her misleading omissions. As a result, she left the impression that Shetty lacked authority to invest Fabric's money in HighTower under Fabric's investment policy. Most obviously, she twice claimed that cryptocurrency investments were not approved under the investment policy. *See* Ex. 2 at ¶¶ 4, 16. And she said that cryptocurrency was not one of the "approved investment types." *See id*. at ¶ 18. The former were direct misrepresentations while the latter omits the fact that the CFO could approve investment types outside of those quantitative guidelines, per the explicit exceptions in the policy.

Like the affiant in *Perkins*, who chose to describe documents rather than provide them to the magistrate judge, Beckley chose to summarize select parts of the investment policy rather than provide the three-page document so the magistrate could make an independent determination. Nor did she fairly describe the policy by failing to disclose the "exception" section and its substance to the magistrate judge. *See* Ex. 2 at ¶¶ 4, 16, 18. As a result, the magistrate was left only with Beckley's skewed representation of the policy. This kept the magistrate from making her own determination of Shetty's authority under the policy and "effectively usurped the magistrate's duty to conduct an independent evaluation of probable cause." *See Perkins*, 850 F.3d at 1118.

There is no good excuse for the Affidavit's misrepresentations. As a *Franks* hearing would confirm, Beckley had the investment policy for four months before she submitted the Affidavit. She either reviewed the policy and intentionally misled the magistrate about its contents or she was reckless in merely passing off Fabric's counsel's cherry-picked excerpts without reviewing the policy he sent. And any confusion or uncertainty she may have had about the policy's meaning could have been resolved simply by providing the policy to the magistrate judge for an independent

MOTION TO SUPPRESS - 10
(No. 2:23-cr-00084-TL)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

determination. *See Perkins*, 850 F.3d at 1118. In any case, Beckley's representations and omissions about the investment policy were *at least* made with reckless disregard for the truth.

There's more. Beckley was at least reckless when she left out many facts known to her showing that the HighTower investment was made in the normal course of business at Fabric. As shown above, before submitting the Affidavit, Beckley was told that Shetty, as CFO, approved bank transfers for Fabric. Ex. 6 at 1. And she was told by a member of the finance team that there was no notification system in place for disclosing transfers, regardless of their size. *Id*. at 3. Beckley also knew that members of the finance team were aware of the HighTower investment and that Shetty discussed it with at least one of them. *Id*.; Ex. 7 at 2. She was told that the HighTower account was visible on Fabric's books. Ex. 7 at 2. And she knew that a finance team member had a login to the HighTower account. Ex. 6 at 3.

The Affidavit leaves all this out. It instead alleges that no one else at Fabric had seen the HighTower agreement and says things like "Shetty made these transfers without the knowledge of anyone else at [Fabric]" to imply that Shetty kept the investment a secret. *See* Ex. 2 at ¶ 4. These misleading statements also imply that the board was supposed to know about the investment beforehand, as if Shetty (as CFO) was required to seek prior approval of investments before he made them. Notably, the Affidavit does not make these claims explicitly, perhaps because they are undeniably false. But Beckley's omissions left this impression.

Taken together, these omissions and misstatements meet the first *Franks* prong.

**II.    The statements were material.**

Under the second prong of *Franks*, the question is whether the misrepresentations and omitted facts were "material"—whether they were necessary to the finding of probable cause. *Id*. at 1119. "The key inquiry in resolving a *Franks* motion is whether probable cause remains once any misrepresentations are corrected and any omissions are supplemented." *United States v. Norris*, 942 F.3d 902, 910 (9th Cir. 2019). "Probable cause to search a location exists if, based on

MOTION TO SUPPRESS - 11
(No. 2:23-cr-00084-TL)

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

the totality of the circumstances, a fair probability exists that the police will find evidence of a crime." *Id*. at 910 (cleaned up).

Once corrected, the search warrant application would either include a copy of the investment policy or fairly describe it, making clear that Shetty had authority to invest in HighTower on behalf of Fabric. It would also make clear that Shetty had not been terminated nor received a notice of termination when he made the investment. It would disclose that Fabric had no notification system requiring disclosure of investments regardless of their size. It would point out that Shetty did not keep the investment a secret. Members of the finance team were aware of the investment, and Shetty discussed his reason for the investment—to gain a higher interest rate—with at least one of them. That same finance team member had her own login to the HighTower account. And the Affidavit would admit that the HighTower investment was on Fabric's books with its other investments.

With these facts included, the Affidavit lacks probable cause that Shetty committed wire fraud. More specifically, without the allegation that Shetty lacked authority under the Investment Policy to invest the money with Hightower, there is no "fair probability" that the police would find evidence of a crime at Shetty's home—because the affidavit does not describe a crime. It describes a CFO operating within his authority to invest some of his company's funds in a cryptocurrency-based treasury account. There is nothing criminal about investing company funds in cryptocurrency. After all, it is common knowledge that reputable companies like Tesla, Inc., a Fortune 500 company, have invested billions in cryptocurrency, as have investment advisors at places like Merrill Lynch and Wells Fargo.

All that is left is that Shetty potentially stood to personally gain from the HighTower investment and that he did not disclose that the investment involved cryptocurrency to Fabric's board. But these allegations do not describe a crime or evidence of one.

MOTION TO SUPPRESS - 12
(No. 2:23-cr-00084-TL)

**Corr Cronin LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Shetty's alleged self-dealing does not support probable cause that he committed wire fraud. The Supreme Court has foreclosed such a theory absent kickbacks or bribery—neither of which is alleged here. *Skilling v. United States*, 561 U.S. 358 (2010).

Nor does the probable cause needle move because Shetty did not disclose to the board that HighTower's Treasury Program was based on cryptocurrency. The warrant application does not provide any facts that make such nondisclosure fraudulent. While it states that Shetty was a fiduciary as CFO, there is no allegation that he had any obligation to disclose the nature of the investments he made on Fabric's behalf. Nor would the failure to comply with such an obligation be criminal. This is because a breach of a fiduciary duty alone is not fraud. *United States v. Bohonus*, 628 F.2d 1167, 1172 (9th Cir. 1980) ("Neither breach of a fiduciary duty, nor the receipt of secret profits . . . would suffice, standing alone, to show a [mail fraud] violation; there must be a recognizable scheme formed with intent to defraud."). Accordingly, the fact that Shetty did not disclose that the HighTower investment was cryptocurrency-based cannot form the basis of fraud.

Because Shetty's non-disclosure of his ownership interest in HighTower and the cryptocurrency nature of HighTower's Treasury Program are not viable fraud theories, the corrected warrant application—that makes clear Shetty did not violate the investment policy—fails to provide probable cause that a crime occurred or that evidence of a crime would be located at Shetty's home. As a result, any evidence collected from his home—and any fruits of that search—should be suppressed.

WHEREFORE, for the reasons above, the Defendant requests that the Court suppress any and all evidence obtained from the Warrant or derived from such evidence, including the following:

1. All items listed on the Search Warrant Return ("Return");
2. All witnesses identified from the documents listed on the Return;

MOTION TO SUPPRESS - 13
(No. 2:23-cr-00084-TL)

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

3. All documents received from those witnesses or from subpoenas issued as a result of information learned from the documents listed on the Return.

DATED this 30th day of April, 2024. I certify that this memorandum contains 4,190 words, in compliance with the Local Criminal Rules.

CORR CRONIN LLP

*s/ Jeffrey B. Coopersmith*
Jeffrey B. Coopersmith, WSBA No. 30954
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Ph: (206) 625-8600 | Fax: (206) 625-0900
jcoopersmith@corrcronin.com

J. Alex Little, admitted *pro hac vice*
Zachary C. Lawson, admitted *pro hac vice*
222 Second Ave. S., Suite 2000
Nashville, TN 37201
alex.little@burr.com
zlawson@burr.com

*Attorneys for Defendant*

MOTION TO SUPPRESS - 14
(No. 2:23-cr-00084-TL)

**Corr Cronin LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900